UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
VICTOR CRUZ,

                Plaintiff,

          -against-

                                         **REPORT &**
                                         **RECOMMENDATION**
O & M PIZZA CORP. *d/b/a Little Italy*      20 CV 5057 (AMD) (CLP)
*Pizza & Restaurant and* DURAID OMAR
ALKHULAQI,

                Defendants.
---------------------------------------------------------X
**POLLAK**, Chief United States Magistrate Judge:

     On October 21, 2020, plaintiff Victor Cruz commenced this action against defendants

O & M Pizza Corp., d/b/a Little Italy Pizza & Restaurant ("O&M"), and Duraid Omar Alkhulaqi

("Alkhulaqi"), seeking damages for unpaid overtime wages, unpaid spread-of-hours wages, and

violations of wage notice and wage statement requirements, pursuant to the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the New York Labor Law ("NYLL") §§ 650, et

seq. (See Compl.[1]; Pl.'s Mem.[2]).[3]

     Currently pending before this Court is plaintiff's motion for default judgment against

defendants O&M and Alkhulaqi. For the reasons set forth below, the Court respectfully

---

    [1] Citations to "Compl." refer to the Complaint, filed Oct. 21, 2020, ECF No. 1.
    [2] Citations to "Pl.'s Mem." refer to the Memorandum of Law in support of plaintiff's default judgment motion, filed Jan. 21, 2022, ECF No. 21-10.
    [3] In the Complaint, plaintiff also made claims for unpaid minimum wages under both the FLSA and NYLL. (Compl. ¶¶ 48, 58). However, it appears that plaintiff has abandoned his minimum wage claims. (Pl.'s Mem.). His Memorandum in Support of default judgment states, at times, that plaintiff was not "paid the proper minimum wage nor overtime compensation at the lawful rate." (Id. at 6). However, plaintiff's damage calculations only include calculations for unpaid overtime wages, and his damages chart makes no mention of minimum wage pay. (See id. at 3; ECF No. 21-7). The Court further notes that, as plaintiff's supplemental calculations show, at all time periods during his employment, the plaintiff's minimum wage rates were higher than both the NYLL and FLSA minimum wage rates according to their respective formulas. (See ECF No. 21-7). Thus, since plaintiff no longer appears to request damages for unpaid minimum wages, the Court has not addressed those claims.

recommends that plaintiff's motion be granted, and a default judgment be entered against both defendants.

## FACTUAL BACKGROUND

Plaintiff resides in Kings County, New York and worked as a cook and general laborer for defendants from "approximately February 2017 through June 2020." (Compl. ¶¶ 9, 23, 28, 29, 33). Defendant O&M is alleged to be a domestic corporation organized under New York state law, with its principal place of business at 867 Broadway, Brooklyn, New York, 11206. (Id. ¶ 10). Defendant Alkhulaqi is alleged to be the "owner, officer and/or agent" of O&M, and he is allegedly responsible for operating O&M and supervising employees, including setting employee schedules, paying employees, and hiring and firing employees. (Id. ¶¶ 11-19). Defendants are alleged to own and operate the restaurant, Little Italy Pizza & Restaurant, where plaintiff worked. (Id. ¶¶ 1-2). Plaintiff further alleges that defendants' annual business revenues exceed $500,000 and that they are engaged in interstate commerce. (Id. ¶¶ 26-27).

According to the Complaint, plaintiff worked six days per week throughout his employment from February 2017 to June 2020, with his regular shift running from 11:30 a.m. to 10 p.m. (Id. ¶ 33). He therefore was required to work 63 hours per week and regularly worked shifts exceeding 10 hours. (Id.) Plaintiff asserts that, from February 2017 until September 2017, he was paid a fixed salary of $550 per week for all hours worked; from October 2017 until March 2018, he was paid $600 per week; and from April 2018 until June 2020, he was paid $700 per week. (Id. ¶¶ 34-36). He states that, as a result of defendants' policy of paying the aforementioned salaries, he was not compensated in accordance with the statutory overtime compensation for hours worked over 40 in a week nor did he receive spread-of-hours compensation for shifts in excess of 10 hours. (Id. ¶¶ 4-5). Additionally, plaintiff states that

defendants did not provide wage statements or wage notices in violation with New York law.

(Id. ¶¶ 37-39).

Plaintiff asserts causes of action under (1) the FLSA and NYLL for failure to pay plaintiff overtime wages, and (2) the NYLL for failure to pay the spread-of-hours premium, and failure to provide plaintiff with proper wage notices and wage statements.  (See id. at 4-6).

## PROCEDURAL BACKGROUND

Following the filing of the Complaint on October 21, 2020, plaintiff served both defendants on November 4, 2020, by personal service on defendant Alkhulaqi at 876 Broadway in Brooklyn, New York 11206.  (See ECF Nos. 5-6).[4]

When defendants failed to file an answer or otherwise respond within the required time period, the Clerk of Court entered a Certificate of Default against defendants on November 10, 2021.  (See ECF No. 19).  On January 21, 2022, plaintiff filed a motion for default judgment (see ECF No. 21), accompanied by the Declaration of Colin Mulholland, Esq., plaintiff's damages calculations, plaintiff's attorney's fees billing records with costs, and a Memorandum of Law in support of the motion.  (See Mulholland Decl.;[5] Dam. Calc.;[6] Fee Calc.;[7] Pl.'s Mem.).

Defendants failed to file anything in response.  On January 24, 2022, the Honorable Ann M.

---

[4] O&M is alleged to be a domestic corporate organization with its principal address at 876 Broadway in Brooklyn, New York 11206.  (Compl. ¶ 10).  Thus, Alkhulaqi in his capacity as "owner, officer and/or agent" of O&M is of sufficient status to be served on behalf of O&M.  (Id. ¶ 11); Fed. R. Civ. P. 4(h) (stating service upon a corporation can be affected by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process").

[5] Citations to "Mulholland Decl." refer to the Declaration of plaintiff's attorney, Colin Mulholland, Esq., in support of plaintiff's motion for default judgment, filed Jan. 21, 2022, ECF No. 21-1.

[6] Citations to "Dam. Calc." refer to plaintiff's damage calculations, filed Jan. 21, 2022, ECF No. 21-7.

[7] Citations to "Fee Calc." refer to plaintiff's lodestar calculations, including the service invoice, filed Jan. 21, 2022, ECF No. 21-8.

Donnelly referred the default judgment motion to the undersigned for a Report and Recommendation.

**DISCUSSION**

I.     Default and Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).  The Clerk of the Court entered a default against defendants on November 10, 2021.  (ECF No. 19).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply

because defendants are in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the Complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

**A.  Liability under the FLSA**

To establish a claim under the FLSA, plaintiff must prove the following: (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098. An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce. . . ." 29 U.S.C. § 206(a).

In the Complaint, plaintiff alleges that defendant O&M is a domestic corporation; defendant Alkhulaqi possessed operational control over the business; and defendants, both separately and jointly, had a gross volume of sales over $500,000, subjecting them to the requirements of the FLSA. (Compl. ¶¶ 10-12, 26). Plaintiff further alleges that defendants and/or their enterprise were "directly engaged in interstate commerce." (See id. ¶ 27). Plaintiff further alleges that he worked for defendants as a cook and general laborer from February 2017 to June 2020. (Id. ¶¶ 17, 29). Accepting plaintiff's allegations as true for purposes of this default, the Court finds that plaintiff has sufficiently alleged that defendants qualify as

"employers" under the FLSA, and, because the Court finds no basis for exempting the employment relationship at issue from the FLSA provisions, plaintiff qualifies as an "employee" under the FLSA.[8]

Moreover, plaintiff alleges in the Complaint that during the period of his employment, he regularly worked more than 40 hours per week and was not paid overtime compensation. (Id. ¶¶ 40-43). He claims that during the time he worked for defendants, he worked six days per week from 11:30 a.m. to 10 p.m., amounting to a total of 63 hours. (Id. ¶ 33). Plaintiff alleges he was paid only a salary of $550 per week from February 2017 until September 2017, $600 per week from October 2017 until March 2018, and $700 per week from April 2018 until June 2020. (Id. ¶¶ 33-36). Plaintiff therefore argues that his pay was insufficient to meet the overtime requirements of the FLSA. (Id. ¶¶ 41, 48).

Thus, because this is a default, the Court accepts plaintiff's uncontested allegations as true, and respectfully recommends that plaintiff be deemed to have sufficiently set forth the necessary elements to state claims under the FLSA for failure to pay overtime wages.

**B. Liability under the NYLL**

Plaintiff also alleges that defendants violated the NYLL. Like the FLSA, the NYLL provides for overtime pay. See N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 146-1.4; see, e.g., Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003). In addition, under the NYLL, an employer is required to provide "one hour's pay at the basic minimum hourly wage rate" on days in which the employee works a spread of hours greater than 10 hours ("spread-of-hours" wages). 12 N.Y.C.R.R. § 146-1.6(a). Lastly, an employer is liable under the NYLL if it fails to provide proper wage notices and statements pursuant to the Wage Theft Prevention Act,

---

[8] See 29 U.S.C. § 213(a) (setting forth the exemptions).

N.Y. Lab. Law §§ 195(1)(a) and 195(3).  Since plaintiff worked for the restaurant that defendants operated (Compl. ¶¶ 1-2), the hospitality industry-specific provisions of the NYLL apply to this case.  See 12 N.Y.C.R.R. § 146-3.1(a) (defining "hospitality industry" to include "any restaurant").

To recover under the NYLL, plaintiff must prove that he is an "employee," and that the defendants are "employer[s]" as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation. . . ."  N.Y. Lab. Law § 651(5).

In this case, plaintiff alleges that he was employed by defendants within the meaning of the NYLL.  (Compl. ¶ 57).  Plaintiff further states that defendants willfully failed to pay overtime wages as required by the NYLL.  (Id. ¶¶ 51-55).  Plaintiff also alleges that he was not paid spread-of-hours compensation nor was he provided proper wage statements or notices as required by the NYLL.  (Id. ¶¶ 37-38).  Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiff be deemed to have adequately alleged the elements necessary to state claims under the NYLL.

### C. Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, the Court finds that plaintiff has sufficiently established liability so as to warrant entry of a default judgment.  See 29 U.S.C. § 207(a)(1).

Here, it is beyond dispute that defendants are in default. Although it appears that defendants were properly served with the Summons and Complaint, they failed to file an answer or otherwise respond to the pleadings. Moreover, the failure by the corporate defendant O&M to obtain counsel in this case constitutes a failure to defend because O&M, as a corporation, cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Defendants also failed to respond to plaintiff's request that default be entered, and they did not submit papers in response to plaintiff's motion for default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's "default is crystal clear—it does not even oppose this motion"). Thus, plaintiff's evidence on damages is undisputed.

Given the numerous opportunities afforded to defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay the case any further. Accordingly, it is respectfully recommended that default judgment be entered against defendants O&M and Alkhulaqi.

### D. Liability of the Individual Defendant: Alkhulaqi

Plaintiff brings claims against the corporate defendant O&M as well as individual defendant Alkhulaqi, who is alleged to own and/or operate O&M. (Compl. ¶ 11). Individuals may be held jointly and severally liable under the NYLL and FLSA if they meet the statute's definition of an employer. Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) (noting that courts in the Second Circuit apply the same analysis for joint

liability under the FLSA and NYLL).  This definition extends to "'any person . . . employing any individual in any occupation, industry, trade, business or service' or 'any individual . . . acting as [an] employer.'"  Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013) (quoting NYLL §§ 190(3), 651(6)).  Courts apply a four-part test examining whether the individual "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records." Lauria v. Heffernan, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009) (quoting Herman v. RSR Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (internal quotation marks omitted)).

Plaintiff alleges that defendant Alkhulaqi was responsible for all matters related to employees' rates and methods of pay and hours worked at O&M, with the power to hire and fire O&M employees.  (Compl. ¶¶ 15-19).  Plaintiff also alleges that, at all times relevant to this action, defendant Alkhulaqi employed plaintiff, was responsible for hiring, supervising, setting pay, and paying plaintiff, and that he possessed the power to terminate plaintiff.  (Id. ¶¶ 9-19).

Taken together and drawing all reasonable inferences in favor of plaintiff, the allegations demonstrate that defendant Alkhulaqi was an employer within the meaning of the NYLL and the FLSA and is jointly and severally liable with O&M for the judgment.

II.    Damages

With respect to damages, plaintiff requests backpay, liquidated damages, statutory damages for wage statement and wage notice violations, interest, and attorney's fees and costs.

**A.  Legal Standard**

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v.

E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653

F.2d at 65; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing

United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Deshmukh v. Cook, 630 F.

Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed.

1988).  However, a plaintiff must still prove damages in an evidentiary proceeding at which the

defendant has the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup,

Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an

admission of liability, the quantum of damages remains to be established by proof unless the

amount is liquidated or susceptible of mathematical computation.'"  Levesque v. Kelly

Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting

Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not

consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that: "The

Court may conduct hearings or make referrals – preserving any federal statutory right to a jury

trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."

Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages

specified in a default judgment, it may, but need not, make the determination through a hearing."

Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases),

aff'd, 873 F.2d 38 (2d Cir. 1989).  Here, because the plaintiff has provided a reasonably detailed

affidavit in support of his request for damages, the Court sees no reason not to proceed.

**B. Backpay – Overtime and Spread of Hours**

　　1.　Overtime Pay

With respect to backpay, plaintiff seeks reimbursement for the overtime pay that he should have received pursuant to both the FLSA and NYLL.  (Compl. ¶¶ 41, 52).  "In actions to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, Plaintiffs may recover under whichever statute provides the greater relief."  Pineda v. Frisolino, No. 15 CV 3774, 2017 WL 3835882, at *11 (S.D.N.Y. Aug. 29, 2017) (citations omitted).

"Under the FLSA, the 'regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked . . . .'"  Pineda v. Frisolino, Inc., 2017 WL 3835882, at *10 (quoting 29 C.F.R. § 788.109).  Under the hospitality-specific provisions of the NYLL, the regular rate is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the *lesser* of 40 hours or the actual number of hours worked by that employee during the work week."  12 N.Y.C.R.R. § 146-3.5 (emphasis added).  Since minimum wage and overtime rates under the NYLL were significantly higher during both periods, and a plaintiff cannot recover damages under both the FLSA and NYLL, the Court has only considered plaintiff's claims under the NYLL in calculating plaintiff's damages. See Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010) (holding that plaintiff may only recover once for the same injury).

Plaintiff's Complaint alleges that he worked 63 hours per week for a salary of $550 per week from February 1, 2017, until September 2017, $600 per week from October 2017 until

March 2018, and $700 per week from April 2018 until June 23, 2020.[9]  (Pl.'s Mem. at 7;

Mulholland Decl. ¶ 10; Compl. ¶¶ 33-36).  Here, the NYLL allows for the greater recovery

because Cruz's regular rate of pay will be determined by dividing his weekly wage by 40 hours,

rather than by the 63 hours he actually worked each week.  Yu Wei Cao v. Miyama, Inc., No. 15

CV 266, 2019 WL 4279407, at *9 (E.D.N.Y. Sept. 10, 2019).  Thus, plaintiff's hourly rate

should be calculated by dividing those fixed rates of $550, $600, and $700 by 40 hours per week,

resulting in an hourly rate of $13.75 per hour for the period from February 2017 to September

2017, an hourly rate of $15.00 per hour from October 2017 to March 2018, and an hourly rate of

$17.50 from April 2018 until June 2020.  (See Dam. Calc.).  That means his overtime rate would

be $20.63 per hour,[10] $22.50 per hour, and $26.25 per hour, respectively.  (Id.)

Using these numbers, plaintiff calculates that, with 23 hours of overtime worked during

all periods, he was underpaid by $474.38 per week from February 2017 through September

2017.  Plaintiff also calculates that he was underpaid by $517.50 per week from October 2017

through March 2018.  Finally, plaintiff also claims that from April 2018 until June 2020, he was

underpaid by $603.75 per week.  (See id.).  Thus, according to plaintiff, in total, he is owed

$99,618.75 in unpaid overtime wages.  (Id.; Pl.'s Mem. at 7).  The Court, through its own

---

[9] Although plaintiff cites "June 2020" as the end employment date throughout the Complaint (see Compl. ¶¶ 9, 28, 33, 36), plaintiff uses June 23, 2020, in his calculations as the actual last day of his employment.  (See Dam. Calc.).  Plaintiff also states that he began working for defendants in February 2017, and uses February 1, 2017, as his starting date.  (Id.)  Thus, having been provided no other date by plaintiffs or defaulting defendants, the Court will use these dates in all subsequent calculations.

[10] To be exact, the overtime rate for $13.75 per hour from February 2017 to September 2017 would be $20.625, which the plaintiff uses to calculate underpayment, although plaintiff lists $20.63 in his calculation table.  (See Dam. Calc.).  Thus, initially rounding the overtime rate to $20.63 in the Court's calculations would result in a slightly higher amount in damages than plaintiff requested.  As a result, the Court has used plaintiff's $20.625 number as the overtime rate for calculating underpayment; in using that number, the Court has corroborated plaintiff's final requested amount.  (Id.)

calculations, has reached the same amount of damages, and respectfully recommends that plaintiff be awarded $99,618.75 in unpaid overtime wages.[11]

   2.   Spread-of-Hours Pay

In addition, under the NYLL, an employee is entitled to receive one additional hour of pay calculated at the applicable minimum wage rate per day for the days during which the employee worked more than 10 hours.[12]   12 N.Y.C.R.R. § 146-1.6.   In this case, plaintiff alleges that he worked shifts in excess of 10 hours each day for 6 days each week, during the entire time he worked for defendants.   (Compl. ¶ 33).   He therefore argues that he should have received an additional 6 hours of pay per week, calculated at $10.50 per hour for the period from February 2017 to December 30, 2017; $12.00 per hour from December 31, 2017, to December 30, 2018; $13.50 from December 31, 2018, to December 30, 2019; and $15.00 per hour from December 30, 2019, to June 2020 for a total of $13,167.00.   (Dam. Calc.).   Since the NYLL requires that spread-of-hours pay be calculated based on the applicable minimum wage rates in place for employers that employ ten employees or fewer during the respective periods, the amounts owed are not based on plaintiff's regular rate, but on the minimum wage rates in effect during each period. 12 N.Y.C.R.R. § 146-1.6.

---

[11] The Court's calculations are as follows:
Feb. 2017 – Sept. 2017: $20.625 x 23 hours = $474.375 per week x 34 weeks = $16,128.75.
Oct. 2017 – Mar. 2018: $22.50 x 23 hours = $517.50 per week x 26 weeks = $13,455.00.
Apr. 2018 – June 2020: $26.25 x 23 hours = $603.75 per week x 116 weeks = $70,035.00.
Adding the total amount for each period results in $99,618.75.
[12] The Court has verified that plaintiff's requested rates comport with the NYLL's minimum wage rates for the relevant periods.   See N.Y.C.R.R. § 146-1.2(a) (listing minimum wage rates of "$10.50 per hour on and after December 31, 2016; $12.00 per hour on and after December 31, 2017; $13.50 per hour on and after December 31, 2018; [and] $15.00 per hour on and after December 31, 2019").   The Court notes that plaintiff uses the "small employer" rates in his damages calculations, although plaintiff never explicitly states how many employees defendants employed, nor does he cite to the provision for small employers.   (See Pl.'s Mem.; Dam. Calc.).   Thus, in the absence of any further information regarding the number of employees employed by defendants, the Court has adopted the small employers' rate, which provides a lower rate of pay than that for large employers.   See N.Y.C.R.R. § 146-1.2(a).

Given that there were 47 weeks between February 1, 2017, and December 30, 2017, and plaintiff claims to have worked more than 10 hours a day, 6 days per week, he should have received an extra $10.50 a day for each day that he worked more than 10 hours for a total of $2,961 for this period.  On December 31, 2017, the NYLL minimum wage rate increased from $10.50 to $12.00.  N.Y.C.R.R. § 146-1.2.  Thus, using the NYLL minimum wage rate of $12.00 an hour that was in effect during the 52 weeks from December 31, 2017, to December 30, 2018, and considering plaintiff's claim for spread-of-hours pay 6 days per week, he should have received $3,744.  Id.  For the 52 weeks between December 31, 2018, to December 30, 2019, the minimum wage rate was $13.50 per hour and thus, with 6 days per week of spread-of-hours pay, plaintiff should have received $4,212 during this period.  Id.  Finally, for the 25 weeks between December 31, 2019, and June 23, 2020, the NYLL minimum wage rate was $15.00 per hour and since plaintiff alleges 6 days per week of spread-of-hours pay, plaintiff should have received $2,250 during this time range.  Id.  In total, this Court's calculations result in a total spread-of-hour damages of $13,167.00.  The Court's calculations align with plaintiff's calculations[13] and therefore, it is respectfully recommended that plaintiff be awarded $13,167.00 in unpaid spread-of-hours pay.

Thus, the Court respectfully recommends that plaintiff be awarded a total of $112,785.75 for unpaid overtime and unpaid spread-of-hours wages.

---

[13] The Court's calculations are as follows:
Feb. 1, 2017 – Dec. 30, 2017: $10.50 x 6 days per week x 47 weeks = $2,961.00.
Dec. 31, 2017 – Dec. 30, 2018: $12.00 x 6 days per week x 52 weeks = $3,744.00.
Dec. 31, 2018 – Dec. 30, 2019: $13.50 x 6 days per week x 52 weeks = $4,212.00.
Dec. 31, 2019 – June 23, 2020: $15.00 x 6 days per week x 25 weeks = $2,250.00.
Adding the total amount for each period results in $13,167.00.

### C. Liquidated Damages

In addition to compensatory damages, plaintiff seeks liquidated damages pursuant to both federal and state law.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Plaintiff claims he is entitled to liquidated damages under the FLSA and the NYLL for the entire period, amounting to a total of $112,785.75 in liquidated damages on his unpaid overtime wages and spread-of-hours pay.  (Dam. Calc.; Pl.'s Mem. at 10; Mulholland Decl. ¶¶ 64-65).  However, since the Mulholland Declaration references the NYLL's liquidated damages provision when discussing how plaintiff's damages were calculated, the Court has only considered liquidated damages under the NYLL.[14]  (See Mulholland Decl. ¶ 63).

The NYLL provides for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments.  N.Y. Lab. Law §§ 198(1-a), 663(1).  Under the NYLL, the burden falls upon the employer to prove good faith in order to avoid an award of liquidated damages.  See Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  The employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception."  Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d at 142).

Defendants have defaulted and therefore have not met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime and spread-of-hours wages to plaintiff; thus, the Court finds that plaintiff is entitled to an award of liquidated damages under

---

[14] In any event, plaintiff is not entitled to an award of liquidated damages under both the NYLL and the FLSA.  Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018) ("[w]e therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct").

the NYLL.  Accordingly, the Court recommends awarding plaintiff an additional $112,785.75 in liquidated damages, which is equal to the amounts due in unpaid overtime and spread-of-hours wages.

### D. Pre-Judgment Interest

Plaintiff also seeks an award of interest calculated at the rate of 9% per annum on the overtime wages and spread-of-hours wages that he was entitled to receive but was not paid. (Mulholland Decl. ¶¶ 49, 52, 71, 76).  Under New York law, plaintiff is entitled to interest on all wages awarded, calculated at a rate of 9% per annum.  See N.Y.C.P.L.R. § 5004.  Pre-judgment interest is not available under the FLSA.  The federal statute does not allow an employee to recover "prejudgment interest on any portion of their recovery for which they have been awarded federal liquidated damages," because liquidated damages under the FLSA "are considered compensatory in nature and thus serve as a form of pre-judgment interest."  Yuquilema v. Manhattan's Hero Corp., No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citations and quotation marks omitted), report and recommendation adopted, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); see Yu G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2015).

However, the Second Circuit has held that, as liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).[15]  In this case, since the Court did not award plaintiff damages on his FLSA claims, there is no impediment to awarding liquidated damages and interest on plaintiff's NYLL claims.

---

[15] However, where plaintiffs receive damages under both the FLSA and the NYLL, pre-judgment interest accrues on any amounts for which liquidated damages are not awarded under the FLSA. Yuquilema v. Manhattan's Hero Corp., 2014 WL 4207106, at *11; Yu G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d at 261.  Further, pre-judgment interest may not be awarded under the NYLL in addition to

Accordingly, plaintiff is entitled to pre-judgment interest on his unpaid overtime wages and spread-of-hours pay. Where, as here, violations of the NYLL occur over an extended period of time, courts calculate pre-judgment interest "upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Thus, this Court has computed interest on plaintiff's total damages from the date halfway between when the plaintiff began and ceased working for defendants. See also Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020) (utilizing mid-point method and calculating interest due on plaintiffs' total damages); Cabrera v. Canela, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019); Cortez v. 8612 Best Coffee Shop, Inc., No. 13 CV 3095, 2015 WL 10709830, at *8 (E.D.N.Y. Aug. 14, 2015); Ting Yao Lin v. Hayashi Ya II, Inc., No. 08 CV 6071, 2009 WL 289653 (S.D.N.Y. Jan. 30, 2009) (finding use of midpoint as an "acceptable" methodology), report and recommendation adopted sub nom. Yao Lin v. Hayashi Ya II, Inc., No. 08 CV 6071, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009). A court uses the total amount of damages to calculate interest even when the plaintiff's wages have changed over time. See Wicaksono v. XYV 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011); see also Vazquez v. 142 Knickerbocker Enter., Corp., 409 F. Supp. 3d 81, 91 (E.D.N.Y. 2018) (calculating interest due on total amount of damages, even when spread-of-hours wage rate changed over time).

Here, however, plaintiff fails to account for the midway point, and thus erroneously calculates pre-judgment interest from the beginning of his employment, reaching a total of $32,415.33 in pre-judgment interest from February 1, 2017, to June 23, 2020. (Dam. Calc.). For

---

liquidated damages that are awarded for violations of the FLSA. See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011); Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 92-93 (E.D.N.Y. 2012); see also Hengjin Sun v. China 1221, Inc., 2016 WL 1587242, at *5-6 (citing cases and holding that plaintiffs are entitled to pre-judgment interest on their non-overlapping NYLL wage claims at a simple rate of 9% per year).

Mr. Cruz, the date where calculations should begin is October 23, 2018, the midpoint between

February 1, 2017, and June 23, 2020.  According to the Court's calculations, plaintiff is entitled

to a pre-judgment interest award of $27.81 per day, based on a calculation of 9% of $112,785.75,

divided by 365.  See Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d at 662 (utilizing same

calculating method).

It is therefore respectfully recommended that plaintiff Cruz be awarded $20,273.49 in

interest, calculated from October 23, 2018, to October 21, 2020, the date the Complaint was

filed, for a total of 729 days.  It is further respectfully recommended that additional interest be

awarded as calculated by the Clerk of Court, from October 21, 2020, to the date final judgment is

entered.  See Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d at 662; Gortat v. Capala Bros.,

949 F. Supp. 2d at 380.

### E. Statutory Damages for Wage Notice Violations

Plaintiff also alleges that defendants never provided him with a wage notice at the time of

hiring, nor did defendants provide updated notices when necessary, or wage statements, as

required by NYLL §§ 195(1) and 195(3).[16]  (Mulholland Decl. ¶ 60; Compl. ¶¶ 37-39, 65-70).

Section 195(1) requires that an employer provide a notice to the employee, at the time of

hiring, that sets forth the rate of pay, allowances, and other specified information.  N.Y. Lab.

Law § 195(1).  Employers are also required to provide such a notice whenever there is a change

---

[16] Plaintiff is not entitled to pre-judgment interest on his statutory wage notice violation claims. See Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017) (stating that "[p]rejudgment interest is not available for violations of the wage statement or wage notice provisions" and citing NYLL § 198(1-b), (1-d) which provides for damages of up to $5,000 but did not provide for prejudgment interest); see also Godwin v. Buka New York Corp., No. 20 CV 969, 2021 WL 612336, at *10 (E.D.N.Y. Feb. 17, 2021) (awarding interest only on "unpaid minimum wages and spread-of-hours wages"), report and recommendation adopted, 2021 WL 1026553 (E.D.N.Y. Mar. 17, 2021); Coley v. Vannguard Urb. Improvement Ass'n, Inc., No. 12 CV 5565, 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 27, 2018) awarding interest only on plaintiff's "unpaid wages, underpaid wages, vacation pay, and the portion of overtime pay compensated under the NYLL"), as amended (Mar. 29, 2018).

in any of the information required by the notice, such as the rate of pay.  Id.  Section 195(3)

requires that every employer provide to his or her employees "a statement with every payment of

wages," listing various information, including the dates of work covered by the payment,

information identifying the employer and employee, details regarding the rate of pay and the

overtime rate of pay, and the number of hours worked.  Id. § 195(3).

The statute provides that an employee can recover $250.00 for each workday that the

employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00.  See N.Y.

Lab. Law § 198(1-d).  Similarly, an employee can recover $50.00 for each workday that the

employer was in violation of Section 195(1), up to a statutory maximum of $5,000.  See id. §

198(1-b).  Here, plaintiff alleges that he did not receive the required wage notice at the time of

hire or at any point in time, nor was he provided with wage statements when he received his

wage payments.  (Compl. ¶¶ 66, 69).  Since plaintiff began working in February 2017 and

worked for more than the minimum number days required, he is entitled to receive an additional

$5,000 for each of these statutory violations, or $10,000 in total, as a penalty for defendants'

violation of these sections.

**F.  Post-Judgment Interest**

Plaintiff also seeks an award of post-judgment interest.  (Mulholland Decl. ¶ 71).  Interest

under 28 U.S.C. § 1961(a) is calculated "from the date of the entry of the judgment, at a rate

equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board

of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the

judgment."  28 U.S.C. § 1961(a).  The Second Circuit has held that post-judgment interest is

mandatory on all awards in civil cases as of the date judgment is entered.  Lewis v. Whelan, 99

F.3d 542, 545 (2d Cir. 1996).  Accordingly, it is respectfully recommended that plaintiff be

awarded post-judgment interest at the statutory rate on the totality of plaintiff's award, including

plaintiff's compensatory, liquidated, and statutory damages, as calculated by the Clerk of Court.

### G. Attorney's Fees

In his Complaint, plaintiff requested attorney's fees.  (Compl. ¶ 6).  Both the FLSA and

NYLL allow for an award of attorney's fees.  See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(4),

663(1).  Indeed, under the FLSA, the Court "must" award a reasonable attorney's fee to a

prevailing party in an FLSA action.  Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp.

2d 470, 473 (S.D.N.Y. 2009) (providing that the court in an FLSA action "shall, in addition to

any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid

by the defendant, and costs of the action" (quoting 29 U.S.C. § 216(b))); see, e.g., Torres v.

Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012),

aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013).  Similarly, the NYLL provides for an award of

reasonable attorney's fees when the employee prevails on a wage claim.  N.Y. Lab. Law §

663(1).  Section 663 provides that successful employees are entitled to:

> recover in a civil action the amount of any such underpayments,
> together with costs all reasonable attorney's fees, prejudgment
> interest as required under the civil practice law and rules . . . .

Id.  Plaintiff is a prevailing party under the FLSA and NYLL if he "'succeed[s] on any

significant issue in litigation which achieves some of the benefit [he] sought in bringing suit.'"

Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d at 474 (quoting Hensley v.

Eckerhart, 461 U.S. 424, 433 (1983)); see Koster v. Perales, 903 F.2d 131, 134 (2d Cir. 1990)

(holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately

obtained is not identical to the relief demanded in the complaint").  Here, because defendants

have defaulted, plaintiff is a prevailing party and therefore should receive an award of reasonable attorney's fees and costs.

      1.  <u>Legal Standard</u>

"The district court retains discretion to determine . . . what constitutes a reasonable fee." <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011) (quoting <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 758 (2d Cir. 1998)). "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." <u>Dunn v. Advanced Credit Recovery, Inc.</u>, No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing <u>Perdue v. Kenny A.</u>, 559 U.S. 542, 551-52 (2010)), <u>report and recommendation adopted</u>, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); <u>see also</u> <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 188-90 (2d Cir. 2008). To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." <u>Moore v. Diversified Collection Servs., Inc.</u>, No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013), <u>report and recommendation adopted</u>, 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); <u>see also</u> <u>Adusumelli v. Steiner</u>, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate" (citing <u>Millea v. Metro-North R.R., Co.</u>, 658 F.3d at 166)); <u>Dunn v. Advanced Credit Recovery, Inc.</u>, 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 167 (quoting Perdue v. Kenny A., 130 S. Ct. at 1673). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Id. (quoting Perdue v. Kenny A., 130 S. Ct. at 1673); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." Id. As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[17] 2012 WL 676350, at *5, n.6.

The burden is on the party moving for attorney's fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged. See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'" (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994))). To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to

---

[17] The Johnson factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citations omitted) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located).

2.  Analysis

In this case, plaintiff is represented by Colin Mulholland, Esq., a New York sole practitioner. (Mulholland Decl. ¶ 70). In accordance with New York State Association for Retarded Children, Inc. v. Carey, Mr. Mulholland submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged was constant, along with a description of services performed. 711 F.2d 1136, 1148 (2d Cir. 1983). (See Fee Calc.). Plaintiff seeks attorney's fees in the amount of $3,375.00, representing services performed by Mr. Mulholland, who has managed his own practice since 2019, with a primary focus on labor and employment law cases. (Mulholland Decl. ¶ 70). Mr. Mulholland is requesting reimbursement in this case at the rate of $375 per hour. (Id. ¶ 69).

Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court finds that the rate of $375 per hour for a sole practitioner of Mr. Mulholland's experience is within the range of billing rates of similarly

experienced attorneys working on comparable matters in the Eastern District.  See, e.g., Sajvin v. Singh Farm Corp., No. 17 CV 4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (awarding $500 per hour to partner in FLSA case, though noting that "$450 has been the upper limit in this District since at least 2013"); Gutman v. Klein, No. 03 CV 1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (stating that rates between $300 and $400 for partners are within the reasonable range in the Eastern District of New York).

Turning to the number of hours billed, the total number of hours billed in this matter was 9 hours.  (Mulholland Decl. ¶ 69; Fee Calc.).  Courts in this circuit have approved fees where the attorneys billed a far higher number of hours in FLSA and NYLL default cases.  See Baltierra v. Advantage Pest Control Co., No. 14 CV 5917, 2015 WL 5474093, at *13 (S.D.N.Y. Sept. 18, 2015) (approving fees of $22,075 for 108.2 hours billed in an FLSA and NYLL default case with multiple plaintiffs).

Having reviewed the billing records submitted by counsel and being familiar with the proceedings to date, the Court finds that the number of hours charged in this matter is reasonable, given the amount of work performed.  Accordingly, based on the hourly rates set forth above, and the hours billed on this matter, the Court respectfully recommends that plaintiff be awarded $3,375 in attorney's fees.

Plaintiff also requests a total of $470 in costs, representing $400 for the filing fee and $70 for the service of process fees.  (Mulholland Decl. ¶ 69; Fee Calc.).  Based on a review of the record, the Court finds these costs to be reasonable, and respectfully recommends that plaintiff be awarded $470 in costs.  See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service of process, legal research, and postage); see also Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005)

(explaining that "[i]dentifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable . . . and are often distinguished from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate" (citing Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987)).  In sum, the Court recommends that plaintiff be awarded $3,375 in attorneys' fees, plus an additional $470 in costs, totaling $3,845.

## CONCLUSION

Accordingly, the Court respectfully recommends that plaintiff's motion for default judgment be granted.  The Court further respectfully recommends that plaintiff be awarded $259,689.99 in damages, which includes $112,785.75 in compensatory damages for defendants' failure to pay overtime and spread-of-hour wages, $112,785.75 in liquidated damages, $20,273.49 in pre-judgment interest, $10,000.00 for statutory violations, and $3,845.00 in attorney's fees, including costs.  Additionally, the Court respectfully recommends that plaintiff is entitled to additional pre-judgment interest calculated from the filing of the Complaint to entry of final judgment, and post-judgment interest on the award.  The Court further recommends that defendants be held jointly and severally liable for the plaintiff's damages.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiff is Ordered to serve a copy of this Report and Recommendation on defendants and file proof of service on the docket by July 27, 2022.  The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  July 22, 2022
Brooklyn, New York

*Cheryl L. Pollak*

CHERYL L. POLLAK
Chief United States Magistrate Judge
Eastern District of New York